# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE: )
BARNHILL'S BUFFET, INC. ) Case No. 07-08948
    Debtor ) Chapter 11
) Judge George C. Paine, II
)
)

## MEMORANDUM

This matter is before the court on Barnhill's Buffet Inc.'s (hereinafter "debtor" or "Barnhill") motion to "(I) SELL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 USC §363(b) and (f) AND (II) TO ASSUME AND ASSIGN CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS PURSUANT TO 11 USC § 365(a) and (f) TO STARLITE HOLDINGS, INC." on an expedited basis. Four objections were filed to the debtor's motion: (1) SCS General Contractors, Inc., (2) the Official Unsecured Creditors Committee, (3) the United States Trustee, and (4) Spirit Finance Corporation. At the hearing, the parties announced that the objections of SCS General Contractors and the United States Trustee were resolved. For the reasons contained herein, the court hereby DENIES the debtor's Motion to Sell Property and to Assume and Assign the Leases to Starlite Holdings, Inc. without prejudice to seek court approval for any future proposed sale to Starlite Holdings, Inc..

*Factual Background*

This chapter 11 case was commenced on December 3, 2007. Debtor is the owner and operator of a chain of Southern-style buffet restaurants. As of the Petition Date, Debtor operated 29 restaurants in six states employing approximately 1,650 persons. With the filing of the petition, Barnhill sought to sell substantially all of its assets. Originally, the Debtor sought, among other things, (a) to sell to Star Buffet Management, Inc. ("Star") all of the Debtor's right, title and interest in 21 restaurants free and clear of all liens, claims and other interests pursuant to an Asset Purchase Agreement dated as of December 2, 2007, (b) to assume, assign, and sell to Star certain rights and obligations as set forth in the Star Asset Purchase Agreement and arising under certain executory contracts and unexpired leases, and (c) to sell all remaining assets and assume and assign any executory contracts and unexpired leases related thereto.

Subsequent to the filing of the original motion, the Debtor and Star entered into the Amended Asset Purchase Agreement dated as of January 21, 2008, whereby the terms of the sale to Star were amended to reflect, among other things, that only the assets, executory contracts and unexpired leases relating to 16 Restaurants would be sold and assigned to Star instead of the originally contemplated sale of assets for 21 Restaurants, thereby reducing the purchase price from $7.5 million to $5 million. That sale closed on January 31, 2008.

On February 4, 2008, the debtor filed the current expedited motion seeking approval to sell, and assume and assign, to a newly formed entity, Starlite Holdings, Inc. (a wholly owned and operated subsidiary of Star Buffet, Inc.), four of the remaining restaurants and other associated personal property and contracts necessary to the operation of the business. The terms of the sale, as provided in the February 5, 2008 Asset Purchase Agreement, call for, among other things, Starlite Holdings, Inc. to pay

$1,000,000 in cash to the estate. The debtor seeks an expedited approval of this sale based on: (1) the expiration of current insurance on February 14, 2008 at midnight for those restaurants; (2) the limited availability of funds under the cash collateral order; and (3) Spirit's impending rights under a January 31, 2008 Agreed Order should the debtor fail to obtain insurance or reject the relevant leases.

Spirit is the lessor on the four properties that are the subject of the debtor's motion,[1] and objects to the proposed sale, assumption and assignment based in part on the following: (1) failure to properly market the property; (2) failure to obtain fair market value for the four restaurants, and (3) failure to provide adequate assurances of future performance pursuant to 11 U.S.C. § 365.[2]

## *Discussion*

### *A. The Sale Process*

Spirit's objections relating to the sale process include that: (1) the sale was hastily arranged in order to beat an impending insurance deadline; (2) the assets were not properly marketed; (3) that the offering price is not fair and reasonable, and (4) that the hurried time frame provided inadequate notice to all interested parties. It is the debtor's burden to establish all required elements under 11 U.S.C. § 363 have been met.

---

[1] Pursuant to an Amended and Restated Master Lease Agreement (the "Spirit II Lease") dated as of February 11, 2005, Spirit Master Funding, LLC f/k/a Spirit SPE Portfolio 2004- 6, LLC leases nonresidential real property to the Debtor consisting of land and buildings located at the following addresses: (a) 325 S. Mcgee Avenue, Apopka, Florida, (b) 1070 S. Volusia Avenue, Orange City, Florida, (c) 6706 Highway 63, Moss Point, Mississippi; and (d) 12475 Highway 49, 2 Gulfport, Mississippi (collectively, the "Spirit II Lease Properties").

[2] The Official Committee of Unsecured Creditors also objected to the motion based on lack of time to gather adequate information about the efficacy of this transaction.

Title 11 U.S.C. § 363(b)(1) provides:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

Section 363(b)(1) allows a bankruptcy court, after notice and hearing, to authorize the sale of the debtor's assets outside the ordinary course of business. ***Stephens Industries, Inc. v. McClung*** 789 F.2d 386, 388 (6th Cir. 1986). This Court follows the "sound business purpose" test when examining 363(b) sales. ***Id.*** Factors commonly considered include:

(1) a sound business reason or emergency justifies a pre-confirmation sale;

(2) adequate and reasonable notice of the sale was provided to interested parties;

(3) the sale has been proposed in good faith; and

(4) the purchase price is fair and reasonable.

***See e.g. In re Titusville Country Club***, 128 B.R. 396 (Bankr. W.D. Pa. 1991). In this case, the debtor has failed to show that a "sound" business purpose justifies the sale; that adequate notice was provided, and that the sales price is fair and reasonable.

Although the debtor presented solid witnesses to provide evidence to support the sale, their testimony did not convince the court that this sale is in the best interest of the estate. The debtor's own expert, John Ball of Brookwood Associates, admitted that he would like to have a higher purchase price for these four stores which produce annual EBIDTA of approximately $950,000.00. In Mr. Bell's opinion further marketing of these assets would not produce a different result, but the court found equally persuasive his testimony on cross examination that these four restaurants as stand-alone assets, had only been discussed with one other entity. The proposed sale to Starlite appears to be

more of a "firesale" providing Starlite with an opportunity to snatch up these potentially valuable estate assets due to the debtor's fear of impending insurance and other deadlines.

The debtor also relied upon the testimony of the debtor's CEO, Craig Barber. Mr. Barber's testimony adequately explained the debtor's need for a quick sale, but did not convince the court that the assets had been adequately marketed, nor that all parties had reasonable opportunity to review all the aspects of the sale. Furthermore, Spirit's desire to garner control of these profitable locations speaks loudly as to their potential marketability outside the debtor's deadline crisis.

The court finds that the debtor simply failed to demonstrate a sound business purpose for the proposed sale, and therefore, denies the debtor's motion without prejudice to seek approval from the court of any other proposed sale of these assets.

### *B. Adequate Assurances of Future Performance*

Even if the sale, as proposed, met ***Stephens***, the court finds that the debtor fell short in its burden to demonstrate adequate assurance of future performance by Starlite Holdings, Inc.. In a proceeding under § 365, the party moving to assume a lease has the ultimate burden of persuasion that the lease is one subject to assumption and that all requirements for assumption have been met. ***In re Service Merchandise Co., Inc.,*** 297 B.R. 675, 682 (Bankr. M.D.Tenn., 2002); ***In re Rachels Industries, Inc.*** 109 B.R. 797, 802 (Bankr. W.D.Tenn., 1990); ***In re Memphis-Fridays Associates,*** 88 B.R. 830, 840-841 (Bankr. W.D. Tenn. 1988). In order to meet that burden, the debtor must establish that the financial condition and operating performance of Starlite is similar to the debtors' at the time of lease signing. The statute's prime purpose is to

provide adequate assurance for the payment of future rent. ***In re Service Merchandise Co.,*** 297 B.R. at 682.

Adequate assurance of future performance is not defined in the Code. Thus, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction in light of the facts of each case." ***In re Natco Industries, Inc.***, 54 B.R. 436, 440-441 (Bankr. S.D.N.Y. 1985). "As designed by Congress, it does not mean absolute insurance that the debtor will thrive and make a profit." ***Id.***, (citing ***In re Alipat, Inc***., 36 B.R. 274, 278 (Bankr. E.D.Mo.1984)). Rather, the emphasis is on protection of the lessor, and the intention "is to afford landlords with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." ***In re Natco Industries, Inc.***, 54 B.R. at 441; ***In re Rachels Industries, Inc***. 109 B.R. at 803.

The court finds that the debtor failed to adequately assure Spirit of the future performance by Starlite Holdings, Inc.. Mr. Ron Dowdy, Treasurer and Secretary of Starlite Holdings, Inc. testified about Starlite's proposed purchase, assumption and assignment relative to these four restaurants. According to Mr. Dowdy, Star Buffet, is a publically traded, financially sound company, and an experienced restaurant operator with approximately 60 restaurants in 16 states. Star Buffet Inc., according to Mr. Dowdy, will guarantee the obligations of its newly formed, wholly owned and operated subsidiary, Starlite Holdings, Inc. for one year following a default limited to a cap of $405,197.00. However, he admitted on cross examination that this guarantee has yet to be memorialized in writing, and accordingly, such was not proof before the court. Mr. Dowdy authenticated a letter, dated February 5, 2008 containing an offer to issue such a guarantee, but he agreed that Spirit never responded to the letter.

Case 3:07-bk-08948    Doc 258    Filed 02/13/08    Entered 02/13/08 08:04:11    Desc Main
Document      Page 6 of 7

Thus, as of the hearing, held on an expedited basis, the court had no guarantee from Star Buffet, and in fact, the February 5, 2008 letter was not from Star Buffet, Inc, but was signed by Mr. Dowdy in his capacity as Secretary/Treasurer of Starlite Holdings, Inc.. The court cannot find adequate assurances of future financial or operating performance for a newly formed entity with no financial history, no operating experience, and no guarantee from Star Buffet, Inc..

Based on the foregoing, the court must find that the debtor's motion to "(I) SELL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 USC §363(b) and (f) AND (II) TO ASSUME AND ASSIGN CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS PURSUANT TO 11 USC § 365(a) and (f) TO STARLITE HOLDINGS, INC." is hereby DENIED without prejudice.

An appropriate order will issue simultaneously herewith.

***THIS MEMORANDUM WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.***