# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE:
BARNHILL'S BUFFET, INC.
    Debtor

Case No. 07-08948
Chapter 11
Judge George C. Paine, II

## MEMORANDUM

This matter is before the court on Barnhill's Buffet Inc.'s (hereinafter "debtor" or "Barnhill") motion for "SALE OF (I) FOUR OPERATING "BARNHILL'S BUFFET" RESTAURANTS (INCLUDING ALL TENANT LEASEHOLD IMPROVEMENTS, FF&E AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN PREMISES AND OVERFLOW PARKING LOT LEASES AND CONTRACTS ASSOCIATED THEREWITH), FREE AND CLEAR OF LIENS, CLAIMS AND OTHER INTERESTS, TO STARLITE HOLDINGS, INC. OR SUCCESSFUL OVERBIDDER, FREE AND CLEAR OF LIENS, CLAIMS AND OTHER INTERESTS AND (2) NOTICE OF THE TERMS AND CONDITIONS FOR THIS AUCTION" on an expedited basis. One objection was filed to the debtor's motion by Spirit Finance Corporation. Responses, either in favor or taking a neutral position, were also filed by: (1) WELLS FARGO BANK, N.A, (2) THE OFFICIAL UNSECURED CREDITORS COMMITTEE, (3) SANTA MARIA WHOLESALE PRODUCE, INC., and (4) MC PRODUCE, INC. Also before the court was the "DEBTOR'S EXPEDITED MOTION FOR AN ADMINISTRATIVE ORDER PURSUANT TO 11 U.S.C. § 331 OF THE BANKRUPTCY CODE ESTABLISHING

PROCEDURES FOR INTERIM MONTHLY COMPENSATION AND REIMBURSEMENT OF EXPENSES OF PROFESSIONALS." The United States Trustee objected to the second motion, but announced in court than an agreed order would be submitted. The court held an evidentiary hearing on the sale motion on February 27, 2007. For the reasons contained herein, the court grants the debtor's sale motion.

*Factual Background*

This chapter 11 case was commenced on December 3, 2007. With the filing of the petition, Barnhill sought to sell substantially all of its assets. Originally, the Debtor sought, among other things, (a) to sell to Star Buffet Management, Inc. ("Star") all of the Debtor's right, title and interest in 21 restaurants free and clear of all liens, claims and other interests pursuant to an Asset Purchase Agreement dated as of December 2, 2007, (b) to assume, assign, and sell to Star certain rights and obligations as set forth in the Star Asset Purchase Agreement and arising under certain executory contracts and unexpired leases, and (c) to sell all remaining assets and assume and assign any executory contracts and unexpired leases related thereto.

Subsequent to the filing of the original motion, the Debtor and Star entered into the Amended Asset Purchase Agreement dated as of January 21, 2008, whereby the terms of the sale to Star were amended to reflect, among other things, that only the assets, executory contracts and unexpired leases relating to 16 Restaurants would be sold and assigned to Star instead of the originally contemplated sale of assets for 21 Restaurants, thereby reducing the purchase price from $7.5 million to $5 million. That sale closed on January 31, 2008.

On February 4, 2008, the debtor sought approval to sell, and assume and assign, to a newly formed entity, Starlite Holdings, Inc. (a wholly owned and operated

2-U.S. Bankruptcy Court, M.D. Tenn.

subsidiary of Star Buffet, Inc.), four of the remaining restaurants and other associated personal property and contracts necessary to the operation of the business. The terms of the sale, as provided in the February 5, 2008 Asset Purchase Agreement, call for, among other things, Starlite Holdings, Inc. to pay $1,000,000 in cash to the estate. The debtor sought an expedited approval of the sale.

Spirit is the lessor on the four properties that were the subject of the debtor's sale motion, and objected to the proposed sale, assumption and assignment based in part on the following: (1) failure to properly market the property; (2) failure to obtain fair market value for the four restaurants, and (3) failure to provide adequate assurances of future performance pursuant to 11 U.S.C. § 365. The court denied the debtor's sale motion without prejudice finding that the debtor had failed to carry the burden of proof for the proposed sale pursuant to **Stephens Industries**, and that the debtor failed to provide adequate assurances of future financial or operating performance. ***See*** *In re Barnhill Buffet Inc.*, 07-08948, Docket Number 258 (Feb. 13, 2008).

In the present motion, the debtor renews its motion for the sale, assumption and assignment of the four restaurants based on an Amended Asset Purchase Agreement. Spirit renewed its original objections relying primarily upon its argument relating to the debtor's failure to demonstrate adequate assurances pursuant to 11 U.S.C. § 365

The court heard testimony from Mr. Ball, the debtor's financial expert, about his additional efforts to market these assets since the last proposed sale. According to Mr. Ball's uncontroverted testimony, he contacted at least 21 parties who had originally shown interest in these assets, and only Star Buffet showed an interest in purchasing. In his expert opinion, there is no other option that would bring greater value to the estate even if he had longer to market the assets.

The court also heard from Barnhill's CEO, Craig Barber. Mr. Barber reiterated his testimony from the prior sale hearing and explained Barnhill's finances at the time that the lease with Spirit was signed. In his opinion, the negotiations with Starlite have been conducted in good faith and Barnhill has provided adequate assurance of future performance, in part by providing the unlimited guarantee of Star Buffet for Starlite's performance under the newly assigned lease.

The debtor also relied upon the testimony of Robert Wheaton, the president and CEO of Star Buffet, Inc. Mr. Wheaton explained, why in his opinion, Starlite was adequately capitalized, and could handle all possible insurance requirements required by the Spirit lease. Mr. Wheaton explained that not only would the revenues and capitalization of Starlite be adequate to perform under the Spirit leases, but Spirit also has the backing of Star Buffet which holds tangible liquidity of approximately $14.5 million. Mr. Wheaton testified that Star Buffet is at least as strong or stronger financially than Barnhill when Barnhill entered into the lease Spirit.

In rebuttal, Spirit called Alan Achterberg, a portfolio manager, handling troubled assets for Spirit. Mr. Achterberg testified that prior to 2005, the Barnhill four individual leases were operating profitably. He testified that he was opposed to the sale based on Star's inability to withstand insurance losses under their proposed capitalization structure, and based on Star's recent reporting of pretax losses. In Mr. Achterberg's opinion Star's was an inferior assignee compared to Barnhill when Barnhill signed the lease with Spirit.

The Creditor's Committee, Wells Fargo, the United States Trustee, and to some extent the other parties filing responses, supported the debtor's motion to sell these assets to Starlite over Spirit's objections.

4-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:07-bk-08948    Doc 307    Filed 02/28/08    Entered 02/28/08 12:41:10    Desc Main
Document      Page 4 of 7

*Discussion*

### *A. The 363 Sale*

Title 11 U.S.C. § 363(b)(1) provides:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

Section 363(b)(1) allows a bankruptcy court, after notice and hearing, to authorize the sale of the debtor's assets outside the ordinary course of business. ***Stephens Industries, Inc. v. McClung*** 789 F.2d 386, 388 (6th Cir. 1986). This Court follows the "sound business purpose" test when examining 363(b) sales. ***Id.*** Factors commonly considered include:

(1) a sound business reason or emergency justifies a pre-confirmation sale;

(2) adequate and reasonable notice of the sale was provided to interested parties;

(3) the sale has been proposed in good faith; and

(4) the purchase price is fair and reasonable.

***See e.g. In re Titusville Country Club***, 128 B.R. 396 (Bankr. W.D. Pa. 1991). Based upon the proof presented, the court finds that the requirements of ***Stephens Industries*** have been met by the debtor.

### *B. Adequate Assurances of Future Performance*

In a proceeding under § 365, the party moving to assume a lease has the ultimate burden of persuasion that the lease is one subject to assumption and that all requirements for assumption have been met. **In re Service Merchandise Co., Inc.,** 297 B.R. 675, 682 (Bankr. M.D.Tenn., 2002); **In re Rachels Industries, Inc.** 109 B.R. 797, 802 (Bankr. W.D.Tenn., 1990); **In re Memphis-Fridays Associates,** 88

B.R. 830, 840-841 (Bankr. W.D. Tenn. 1988). In order to meet that burden, the debtor must establish that the financial condition and operating performance of Starlite is similar to the debtors' at the time of lease signing. The statute's prime purpose is to provide adequate assurance for the payment of future rent. ***In re Service Merchandise Co.,*** 297 B.R. at 682.

Adequate assurance of future performance is not defined in the Code. Thus, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction in light of the facts of each case." ***In re Natco Industries, Inc.***, 54 B.R. 436, 440-441 (Bankr. S.D.N.Y. 1985). "As designed by Congress, it does not mean absolute insurance that the debtor will thrive and make a profit." ***Id.***, (citing ***In re Alipat, Inc***., 36 B.R. 274, 278 (Bankr. E.D.Mo.1984)). Rather, the emphasis is on protection of the lessor, and the intention "is to afford landlords with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." ***In re Natco Industries, Inc.***, 54 B.R. at 441; ***In re Rachels Industries, Inc***. 109 B.R. at 803.

The court finds that the debtor adequately assured Spirit of the future performance of Starlite Holdings, Inc. Mr. Bell's, Mr. Barber's and Mr. Wheaton's testimony, along with the unconditional guarantee of Star Buffet Inc., convinced the court that Starlite will be capable of performance under the assumed and assigned Spirit lease. Although Spirit raised valid issues relating to capitalization and insurance, the court found Mr. Wheaton and Mr. Barber's testimony responsive to Spirit's concerns. Accordingly, the court hereby overrules Spirit's objections to the debtor's proposed sale under the Amended Asset Purchase Agreement with the new unconditional performance guarantee under the lease.

6-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:07-bk-08948    Doc 307    Filed 02/28/08    Entered 02/28/08 12:41:10    Desc Main
Document      Page 6 of 7

Based on the foregoing, the court grants the debtor's motion for SALE OF FOUR OPERATING "BARNHILL'S BUFFET" RESTAURANTS (INCLUDING ALL TENANT LEASEHOLD IMPROVEMENTS, FF&E AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN PREMISES AND OVERFLOW PARKING LOT LEASES AND CONTRACTS ASSOCIATED THEREWITH), FREE AND CLEAR OF LIENS, CLAIMS AND OTHER INTERESTS, TO STARLITE HOLDINGS, INC., as provided herein. The debtor shall submit an appropriate order not inconsistent with this Memorandum within three (3) days of entry of the Memorandum.

***THIS MEMORANDUM WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.***